IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CHRISTINE QUERRY<br>　　　　Plaintiff,<br><br>　vs.<br><br><br>COMMISSIONER, SOCIAL SECURITY<br>ADMINISTRATION<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No.  06-1675-TC<br><br><br>FINDINGS AND RECOMMENDATION |

Coffin, Magistrate Judge:

Before the court is defendant's Motion (#12) to Remand Case to Agency. For the reasons that follow, defendant's motion should be denied.

BACKGROUND

Plaintiff filed this action to review the final order of the Commissioner of Social Security denying her claim for disability insurance (SSDI) benefits on the grounds that she was not disabled as defined by the provisions of the Social Security Act. In plaintiff's view the decision of the Commissioner is not supported by substantial evidence and remand for an award of

1 Findings and Recommendation

benefits is required. Defendant concedes that the ALJ erred but moves to remand so that the matter can be decided de novo. After a review of the record and applicable legal standards, I agree with plaintiff and recommend that defendant's motion for remand should be denied and the matter remanded for an award of benefits.

Medical History

Plaintiff, a 54-year-old woman and high school graduate, alleges that she is disabled for purposes of disability insurance eligibility, 42 U.S.C. § 423(a)(1), based on a number of conditions: (1) post-surgical pain and degenerative disc disease in her neck and back; (2) residual symptoms from bilateral carpal tunnel syndrome; and (3) depression. Tr. 18, 71, 80-81, 85, 232, 286.

The claim stems from limitations attributed to the following medical history drawn from the administrative record. In 1993, plaintiff underwent surgery to repair herniated discs in her neck. Tr. 321. Her neck pain returned in 2002, and she again underwent neck surgery, namely an anterior cervical discectomy and fusion at C4-5 and C5-6. After the surgery, plaintiff experienced pain in her right arm. Tr. 313, 322.

In 2003, plaintiff injured her neck while at work. The emergency room physician who treated her, Dr. Crane, diagnosed her with cervical radicuplopathy and advised her to stay home from work and to visit her orthopedic physician, Dr. Bert. Dr. Crane also noted that plaintiff suffered from depression and noted her medical regimen for that condition. Tr. 140-41.

2 Findings and Recommendation

Plaintiff followed up with Dr. Bert, who characterized her work injury as a cervical strain prescribed pain medication and recommended that plaintiff return to "secretarial" work and refrain from lifting more than 20 pounds. Tr. 233.

In March, April, May, and June of the following year, plaintiff returned to Dr. Bert. Initially, she complained of pain radiating from her neck to her arms that interfered with her work. Tr. 229. Dr. Bert's physical assistant noted that plaintiff feared that her pain medications were disrupting her concentration at work and opined that plaintiff experienced weakness in her shoulder, pincer grasp, and intrinsics. Tr. 229. Dr. Bert diagnosed plaintiff with left-side carpal tunnel syndrome and opined that she should not lift more than twenty pounds. He also opined that plaintiff's neck condition did not warrant new neurological findings. Tr. 228.

Six weeks later, plaintiff returned to Dr. Bert complaining of radiating pain from her neck to shoulders, leg numbness, muscle spasms, and "marked limitation of motion." Tr. 226. Dr. Bert recommended that plaintiff refrain from work until her condition improved, and upon her return, she should confine herself to light work and not lift bags of coins over her head, as she had previously done for her employer. Tr. 226. Still later, in June, Dr. Bert treated plaintiff for lower back pain and leg numbness. Her MRI revealed mildly moderate spinal stenosis at L3-4 with a spondylolistesis, 3 on 4, grade 1. Tr. 224, 238. Dr. Bert recommended epidural spinal injections to manage plaintiff's pain and physical therapy. Tr. 224.

In July, plaintiff was examined by Dr. Rosenbaum, at the

3 Findings and Recommendation

request of her employer's workers' compensation insurer. Dr. Rosenbaum diagnosed plaintiff with cervical spondylosis, status post anterior cervical fusion C4-7, cervical strain, lumbar spondylosis and lumbar strain or lumbar degenerative symptomology, and functional overlay. Tr. 159. In his view, plaintiff's work-related neck injury had not worsened her preexisting conditions, for purposes of determining employer responsibility. Tr. 161.

In September of that year, Dr. Bert contested Dr. Rosenbaum's opinion, writing that plaintiff's work injury aggravated her preexisting spondylosis and that she would not be able to meet the demands of her current job, but she could accomplish "light work activity." Tr. 222. The following month, Dr. Bert opined that plaintiff continued to require epidural injections and physical therapy to treat her pain and conditions. Tr. 221.

In November 2004, plaintiff was examined by Dr. Pylman. He noted that plaintiff reported constant pain rated at 6, on a scale of one to ten, in her lower and upper back. He recorded that her symptoms worsened over time and her pain radiated into her left foot. Tr. 220. Dr. Pylman recommended a cervical epidural injection to treat plaintiff's pain, and more physical therapy. Tr. 219. The following month, Dr. Bert recommended that plaintiff continue to undergo epidural injections by Dr. Pylman. Tr. 215. Plaintiff reported to Dr. Pylman that the injections relieved her neck pain, but not her shoulder and lower back pain, which impaired her sleep. Tr. 213, 215. In January 2005, Dr. Pylman treated plaintiff again for increased back pain,

4 Findings and Recommendation

numbness and stinging sensations in her left foot, and sleeplessness. Tr. 211-12.

In February 2005, Dr. Golden examined plaintiff on behalf of her employer's insurer, for the limited purpose of determining whether plaintiff's workers' compensation claim related to her on-the-job neck injury. With respect to plaintiff's "accepted condition" for purposes of her workers' compensation claim, Dr. Golden diagnosed plaintiff with cervical spondylosis, status post anterior cervical fusion at C4-7, cervical strain attributed to her work injury, and psychosomatic responses. Tr. 282. With reference to the diagnosed conditions, Dr. Golden opined that her residual functional capacity allowed her to sit, stand, or walk for one hour at a time; occasionally lift 20 pounds, and frequently and constantly lift or carry 15 pounds; but "permanently precluded [her] from frequently performing the activities of climbing, reaching, and pushing or pulling more than 20 pounds." Tr. 283. Dr. Golden also noted that plaintiff "may have limitations in other activities due to her chronic back pain problem, which is not a part of this evaluation." Tr. 283.

Dr. Pylman continued to treat plaintiff for her ongoing pain problems. He increased her pain medication in March 2005 and noted that plaintiff reported that although the medication alleviated her pain, it caused forgetfulness and vertigo. Tr. 255; 258. In June 2005, Dr. Bert treated plaintiff for carpal tunnel syndrome after plaintiff reported numbness in both hands when using a computer keyboard. Because she relies more heavily on her right hand, Dr. Bert recommended a right-side carpal tunnel release. Plaintiff underwent the surgery but continued to

5 Findings and Recommendation

experience symptoms on her left side. Tr. 297, 300-04.

In January 2006, plaintiff was involved in a motor vehicle accident and was treated for neck and back pain. Tr. 261-62. During the following months, Dr. Pylman treated plaintiff for increased lower back pain and discovered sacral cysts and degenerative changes in plaintiff's spine. Tr. 291-93. By April, Plaintiff reported that her neck, shoulder, and back pain was making it difficult for her to sit or stand. Tr. 286.

In May 2007, Dr. Pylman provided his opinion on plaintiff's residual functioning capacity. Tr. 326-27. He determined that plaintiff was capable of infrequently lifting up to 10 pounds and incapable to frequent pushing, pulling, climbing, or reaching. He opined that plaintiff could work for an hour in a sedentary position but was required to take a twenty-minute rest break between each hour of work. Dr. Pylman noted that plaintiff's pain medications limited her ability to concentrate and focus. Tr. 326-27.

Procedural Background

At the hearing before the ALJ, the Vocational Expert testified that Dr. Pylman's opinions on plaintiff's RFC would not allow for any kind of work. The VE further testified that if plaintiff were restricted to lifting no more than 10 pounds, she could not perform the light work jobs requiring no complex tasks that the VE had initially discussed: office helper, and bindery machine operator. The VE also stated that, if required to take a 20-minute break between each hour of work, an employee would not be able to remain at any job. Tr. 356-58.

6 Findings and Recommendation

The ALJ applied the implementing regulations that govern the five-step inquiry into whether or not a claimant has a qualifying disability. 20 C.F.R. § 404.1520(b)-(g). The pertinent ALJ findings included the determination, at step two, that plaintiff's impairments -- discogenic and degenerative disc disease of the spine, carpal tunnel syndrome, and affective mood disorder -- are severe. At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment. At step four, the ALJ determined plaintiff's residual functioning capacity to allow her to "lift or carry up to ten pounds frequently and twenty pounds occasionally." The ALJ also found, "In addition, the claimant cannot perform any complex tasks" and is unable to return to her past work.

At step five, the ALJ found that plaintiff's RFC does not allow her to perform the full range of light work, thus her RFC falls between the exertional levels required by light work and sedentary work. Notwithstanding the opinion of the VE and the medical evidence of plaintiff's reaching limitations in the opinions of Drs. Pylman and Golden, the ALJ found that she is able to perform jobs in significant numbers in the national economy, namely the occupations of office helper and bindery machine operator. Tr. 18, 19, 23, 24.

## DISCUSSION

In this case, plaintiff challenges the findings of the ALJ at steps four and five. Tr. 18-24. In plaintiff's view, the ALJ's RFC finding at step four failed to include all of plaintiff's limitations. In particular, plaintiff asserts that

7 Findings and Recommendation

the ALJ disregarded limitations against reaching set forth in the opinions of Drs. Pylman and Golden. Plaintiff also challenges the finding at step five that plaintiff could perform other work, arguing that here physical and mental limitations preclude any substantial gainful activity.

As noted above, plaintiff contends that the ALJ's decision should be reversed because the ALJ improperly rejected plaintiff's allegations, and because the ALJ improperly rejected the opinions of Drs. Pylman and Golden, which included opinions concerning limitations on reaching that undermine the ALJ's determination at step five. In plaintiff's view, the proper remedy is to credit the testimony of the physicians and remand for an award of benefits.

Defendant concedes that the ALJ "did not adequately address plaintiff's mental impairment, did not give sufficient reasons for rejecting her testimony, and did not adequately address any of the medical opinions." Def. Memo. 2. Defendant argues that remand for *de novo* proceedings to allow the ALJ to decide the issues again. However, on this fully developed record, remand for an award of benefits is appropriate.

Under 42 U.S.C. § 423(a)(1)(A), a "disability" is the "inability of engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." As illustrated by the ALJ's findings, implementing regulations govern the five-step inquiry into whether or not a claimant has a qualifying disability. 20 C.F.R. § 404.1520(b)-(g).

The posture of the case requires application of the "<u>Smolen</u> test," which governs when the court may credit improperly rejected medical source evidence and remand for a finding of disability and award of benefits. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1292 (9th Cir. 1996). The court may do so when (1) the ALJ has failed to provide legally sufficient reasons for rejecting medical source evidence; (2) the record requires no further development before a determination of disability may be made; and, (3) the record demonstrates that ALJ would be required to find the claimant disabled were such evidence credited. <u>Id.</u> Here, the parties and the court agree that the ALJ failed to provide legally sufficient reasons for rejecting both Dr. Golden's and Dr. Pylman's opinions that plaintiff is limited to only occasional reaching.

Thus, the <u>Smolen</u> inquiry proceeds to step two. The parties disagree on whether the record requires further development. Plaintiff contends that, when considered with ALJ's own finding that plaintiff limited to work requiring light exertion, the record warrants a finding of disability. I agree.

As an initial matter, taking notice of the Thomson/West Dictionary of Occupational Titles (DOT), see 20 C.F.R. § 404.1566(d), restrictions against work requiring greater than light exertion and more than occasional reaching would preclude the two unskilled occupations that the ALJ found plaintiff could perform, office helper and bindery machine operator (both of which are classified as requiring "frequent" reaching, DOT # 239.567-010, 653.686-026), confirming that the basis on which the ALJ made his finding that plaintiff is "not disabled" is

9 Findings and Recommendation

erroneous.

Evaluating each opinion in view of the record, it becomes clear that the ALJ would be required to find that plaintiff is "disabled" on the existing record, without need for further proceedings. The court takes guidance from Social Security Ruling (SSR) 83-12, which addresses the ALJ's disability inquiry where a claimant's RFC falls between an upper and lower exertional range of work. Here, plaintiff's RFC falls between light and sedentary exertional levels. Tr. 24. Further, the ruling explains the application of numbered table rules in Appendix 2 of Subpart P of the regulations as a framework for adjudicating claims.

Each table rule directs a conclusion on whether a claimant is disabled where the ALJ's individual findings coincide with the rule criteria. Here, the applicable rule for the sedentary exertional level is 204.14, in Table 1. Under the rule, a claimant will be considered disabled if (1) she has a maximum sustained work capability that is limited to sedentary work; (2) she is "closely approaching advanced age"; (3) her education level is "high school graduate or more" but without background that would provide for direct entry into skilled work; and (4) her previous work experience is classified as "skilled or semi-skilled, but with nontransferable skills." The rule presumes that the claimant is capable of 200 sedentary occupations. 20 C.F.R. Pt. 404, Subpt. P, App. 2, 201.00.

The applicable rule for the light work exertional level is 202.14, in Table 2. Under that rule, a claimant will be considered "not disabled" where the same criteria are met. The

10 Findings and Recommendation

record indicates that claimant meets the criteria for each rule, warranting a finding of "disabled" under rule 204.14 and "not disabled" under rule 202.14.

According to SSR 83-12, where, as here, a claimant's exertional level falls between two rules that direct opposite conclusions, a finding of "disabled" is justified where the exertional capacity "is significantly reduced in terms of the regulatory definition," indicating "little more than the occupational base for the lower rule." In other words, a dramatically eroded occupational base can warrant a finding of "disabled." Social Security Ruling 83-12.

Here, both doctors opined that plaintiff's RFC precluded her from frequently reaching. Tr. 283. If limited to reaching only occasionally, plaintiff would be precluded from performing 1668 out of 1708 combined light and sedentary unskilled occupations listed in the DOT. The occupational base, eroded to 40 for both light and sedentary work, is therefore obviously affected. Social Security Ruling 83-12 instructs adjudicators that where "little more than the occupational base for the <u>lower rule</u>" is available to the claimant due to the level of her restrictions, a finding of disabled can be justified. (Emphasis added.) Here, when the opinions are credited with respect to plaintiff's reaching limitation, plaintiff is left with an occupational base for the lower rule (i.e., 204.14, governing sedentary work) of only four occupations. Here, claimant's limitations preclude her from working at all but 4 of the 200 jobs that rule 204.14 presumes that she can perform and still qualify as disabled. Because claimant cannot achieve more than two percent of the

11 Findings and Recommendation

occupational base of the lower rule, much less "little more" than that base, it is difficult to escape the conclusion that, on remand, she would be considered disabled on this record. Moreover, as plaintiff insists, additional limitations established by other improperly rejected medical evidence only sharpen the outcome.

In sum, application of the Smolen criteria requires reversal and remand for a calculation of benefits. Because the Smolen test resolves the disposition of defendant's motion, the court need not consider plaintiff's additional arguments that the ALJ failed to credit plaintiff's testimony and inadequately addressed her mental impairment.

## CONCLUSION

Defendant's Motion (#12) to Remand to Agency should be denied. The matter should instead be remanded for an award of benefits.

IT IS SO RECOMMENDED.

Dated this 29th day of August, 2007.

THOMAS M. COFFIN
United States Magistrate Judge